**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PAUL J. JACKSON,<br><br>Defendant. | CRIMINAL NO. 15-10254-FDS |

**UNITED STATES' SENTENCING MEMORANDUM**

The United States respectfully submits this memorandum in advance of the sentencing of the defendant, Paul Jackson. On October 15, 2015, Jackson pleaded guilty to violating the Investment Advisor Act and committing wire fraud by inducing family, friends, and clients to give him money for seemingly attractive investments in high-profile companies. But Jackson was peddling fiction; there were no investments. Instead, Jackson took the money and spent it on his business, his family, and himself. Jackson exploited his professional status and his personal relationships to fleece innocent investors.

Jackson promptly accepted responsibility for his fraudulent actions, and his current medical condition merits serious consideration, but the Court should overlook neither the financial mayhem Jackson caused, nor his betrayal of family, friends, and profession. Thus, in order to meet the statutory goals of sentencing, the United States respectfully recommends that the Court impose a term of at least 24 months in prison, a reasonable term of supervised release, $1,321,200 in restitution, and the appropriate order of forfeiture.

**JACKSON'S OFFENSE**

Jackson was a registered investment advisor who owned and operated Paul J. Jackson & Associates, LLC, a small investment-advising business in Newton. (Presentence Report ("PSR") ¶ 8.) In addition to giving advice, Jackson managed clients' retirement accounts. (Id.) In 2010, Jackson started offering some clients, family, and friends seemingly attractive investment opportunities. (Id.) These offers typically involved initial public offerings ("IPOs") of high-profile companies, like Facebook, Twitter, and Alibaba. (Id.) Relying on Jackson's representations, these people gave Jackson money to make investments in the opportunities he had described. (Id.)

Instead of investing the funds as promised, however, Jackson spent the money on himself, his immediate family, and his business. (Id. ¶ 9.) For example, Jackson pocketed approximately $552,000 from his brother-in-law. (Id. ¶ 11.) Jackson deceived his own father and sister, taking nearly $68,000 from them. (Id. ¶ 18, 19.) And he stole $47,500 from a newly referred client. (Id. ¶ 17.)

Jackson masked, and attempted to conceal, his scheme to defraud in various ways. (Id. ¶ 10.) For example, when his brother-in-law asked for updates and accountings of his "investments," Jackson simply lied and claimed that the investments were in great shape and generating large returns. (Id. ¶ 11.) When one long-time friend—whom Jackson had fleeced out of $445,000 (a significant portion of which came from a retirement account)—began demanding returns, Jackson sent him $91,000 of funds Jackson had taken from another victim-client. (Id. ¶¶ 12-14.) When two clients demanded return of the $84,500 they believed Jackson had invested for them, he lied and said he had tried to wire money to them; in reality, Jackson had already spent it. (Id. ¶ 15.) When Jackson's sister questioned the status of her invested funds, he lied to

her, claiming her "investment" had been rolled over into a new investment and that she would have to wait another year. (Id. ¶ 19.) In total, Jackson stole $1,412,200 from eight victims during the course of his fraudulent scheme. (Id. ¶ 20.)

## ARGUMENT

As in all criminal cases, the sentence imposed must be sufficient, but not greater than necessary, to achieve the purposes set forth in that statute. 18 U.S.C. § 3553(a); see, e.g., Kimbrough v. United States, 552 U.S. 85, 101 (2007). Along with the advisory Guidelines and the other purposes of Section 3553(a)(2), the Court should "consider, broadly, the nature and circumstances of the offense and the history and characteristics of the defendant and the need for the sentence imposed . . . to protect the public from further crimes of the defendant." United States v. Politano, 522 F.3d 69, 74 (1st Cir. 2008) (internal marks omitted); see United States v. Marsh, 561 F.3d 81, 87 (1st Cir. 2009). The resulting sentence must be reasonable. Kimbrough, 552 U.S. at 111. Here, a sentence of 24 months incarceration is both reasonable and necessary to effectuate the purposes of 18 U.S.C. § 3553(a).

**1. Jackson's Guidelines Sentencing Range is 41-51 months in prison.**

"The guidelines, though advisory, constitute a starting point for the fashioning of a sentence." United States v. Fernandez-Garay, 788 F.3d 1, 6 (1st Cir. 2015) (citation omitted). The parties agree with the United States Probation Office's calculation of the Sentencing Guidelines in this case. The Base Offense Level for a wire fraud conviction is 7, based upon USSG § 2B1.1(a)(1), and 14 levels are added because the loss in this case ($1,412,200) is more than $550,000, but not more than $1,500,000. USSG § 2B1.1(b)(1)(H). Four levels are added because the offense involved a violation of securities law and, at the time of the offense, the defendant was an investment advisor. USSG § 2B1.1(b)(19)(A). Three levels are subtracted

based on the defendant's clear, and timely, acceptance of responsibility.  USSG § 3E1.1(a),(b).

Thus, the defendant's Total Offense Level is 22.  Given that Jackson falls into Criminal History Category I, his Guidelines Sentencing Range ("GSR") is 41-51 months in prison.

**2. A sentence of at least 24 months in prison is reasonable and necessary to effectuate the statutory purposes of sentencing.**

The government recommends that the Court sentence the defendant to prison for at least 24 months, in addition to ordering a reasonable term of supervised release and full restitution.  Given the need to fashion a sentence that would provide just punishment, reflect the seriousness of the offense, deter others from engaging in similar conduct, and account for Jackson's personal characteristics, the recommended sentence is reasonable, but not greater than necessary, to meet the statutory goals of sentencing.

    A. *The recommended sentence would provide just punishment for Jackson's conduct and reflect the nature and seriousness of the offense.*

Jackson was a professional licensed to dispense investment advice.  Attendant to that license was an ethical obligation to act in the best interests of those he was advising—those who relied on his good faith.  In this way, the applicable Guidelines enhancement appropriately reflects Jackson's pernicious behavior.

This was not a fraud on the market.  Jackson used his years of investment experience to take advantage of people who trusted him based on their personal relationships with him.  One set of long-time clients, relying on Jackson's track record, honesty, and expertise, invested $84,500 in an opportunity they couldn't pass up based on Jackson's misrepresentation.  Jackson lied repeatedly to them to cover up his crime.  Another victim—Jackson's friend and client—invested $40,000 in Jackson's scam.  Confident in Jackson's professional investment knowledge and experience, that victim even encouraged someone else to take Jackson up on the offer.

4

Jackson rewarded his friend by stealing his money and then lying to him about it. Jackson even provided false hope that this client would see a positive return on his investment, but there were no investments—only fabrications. Jackson betrayed his fiduciary duty to help himself.

In addition to stealing from clients, Jackson defrauded his friends and family members. Jackson's own father gave his investment-savvy son $55,700 for what turned out to be a fake investment. Jackson took $12,000 from his sister. And he stole over $552,000 from his brother-in-law, who trusted Jackson to invest it. Jackson's brazen betrayals were despicable.

Similarly, Jackson took $445,000—including retirement money—from a friend with whom he had grown close based on their daughters' shared interest in horses. This person trusted Jackson's investment knowledge, experience, and friendship so much that he sent Jackson eight separate checks in response to the phony offers. After the friend demanded his money back, Jackson—in Ponzi-like fashion—gave him $91,000 that Jackson had fleeced from yet another victim.

Jackson used his status as a trusted investment advisor and friend to solve what he apparently viewed as his own financial problems. He disregarded the financial security of his eight victims to steal more than $1.4 million.[1] He sabotaged relationships to remain afloat, while sinking his victims with the burden of financial hardship. For wrecking such financial havoc, Jackson should receive a substantial prison term.

---

[1] Though Jackson shamefully stole from his friends, family, and clients to support his own financial needs, Jackson apparently did not use the money to purchase luxuries for himself. Rather, it appears that Jackson utilized the pocketed money to support his immediate family, including his daughter's expensive equestrian hobby.

*B. The sentence imposed should deter others from engaging in similar conduct.*

General deterrence is critical in this case. As a general matter, the First Circuit, along with other courts, has noted the significance of sentences that promote general deterrence in the cases of white-collar defendants. See United States v. Mueffelman, 470 F.3d 33, 40 (1st Cir. 2006) (the deterrence of white-collar crimes was "of central concern to Congress" in fashioning sentences for white-collar crime); United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, *these crimes are prime candidates for general deterrence*. Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment.") (internal marks and citations omitted) (emphasis added). Courts should not hesitate to impose a reasonable and necessary imprisonment sentence to deter white-collar crimes. See Mueffelman, 470 F.3d at 40 ("Restitution is desirable but so is the deterrence of white-collar crime (of central concern to Congress), the minimization of discrepancies between white- and blue-collar offenses, and the limits on the ability of those with money or earning potential to buy their way out of jail.").[2]

General deterrence plays a particularly important role because of the relative ease with which this crime can occur. As evidenced by these facts, a trusted investment advisor can steal hundreds of thousands of dollars from his family, friends, and clients by simply misrepresenting investment opportunities. The Court must send a strong message to those who are similarly inclined: such crimes will be punished severely.

---

[2] As the First Circuit has noted when discussing departures under the Sentencing Guidelines, "[i]t is impermissible for a court to impose a lighter sentence on white-collar defendants than on blue-collar defendants because it reasons that white-collar offenders suffer greater reputational harm or have more to lose by conviction." United States v. Prosperi, 686 F.3d 32, 47 (1st Cir. 2012).

Jackson targeted his victims' retirement accounts, and exploited longstanding, trusting relationships to carry out his scheme. Jackson betrayed the fiduciary duty he owed his clients by offering fabricated investments. He enriched himself at the expense of his loved ones and loyal clients by abusing his professional license and reputation. The recommended sentence would send an important message that people in such positions of trust must, at all times, faithfully serve their clients and take scrupulous care to place their clients' interests above their own.

> C. *The defendant's background and characteristics, and the need to avoid unwarranted sentencing disparities, support the recommended sentence.*

As set forth in the materials submitted to U.S. Probation and to the Court, Jackson's medical condition and prompt acceptance of responsibility, among other things, merit serious consideration in weighing the appropriate term of imprisonment. Indeed, the government's below-guidelines recommendation here flows in large part from these considerations.[3]

First, Jackson's mental-health history is well-chronicled. (See PSR ¶¶ 62-63.) And now he is suffering from a serious illness that carries a grim—though uncertain—prognosis.[4] The Court should consider such factors in fashioning a just sentence, but prison should still be part of the disposition. Jackson's cancer diagnosis, while tragic, had nothing to do with the choices he made to defraud, steal, and lie over and over again. An illness, however serious and life-threatening, does not obviate the need to incarcerate a felon who stole nearly $1.5 million from those who trusted him most.

---

[3] The discovery of Jackson's illness succeeded the execution of the plea agreement in this case, which called for the government to recommend a sentence of 33 months. The government acknowledges the seriousness of this changed circumstance in recommending a sentence even further below Jackson's GSR.

[4] The defendant's sentencing memorandum states in its opening paragraph that "it's more likely than not that [Jackson] will be dead in one year." That statement is not supported in the information provided by his treating oncologist.

7

Moreover, the Court should reject the suggestion that the Bureau of Prisons cannot adequately care for Jackson's health while he is in prison. As this court is aware, the Bureau of Prisons maintains robust procedures and facilities to ensure that prisoners' health and medical needs are adequately met. Indeed, "[a]s the BOP provides extensive medical services, a defendant's medical condition generally will not preclude a sentence to BOP custody." (Department of Justice, Legal Resource Guide to the Federal Bureau of Prisons, at 25 (2014), available at, http://www.bop.gov/resources/pdfs/legal_guide.pdf). BOP explicitly provides care for inmates "with cancer in active treatment . . . ." (Id. at 26). Thus, while the government agrees that the Court should vary below Jackson's GSR in this case, the Court can and should impose a term of imprisonment commensurate with the facts and circumstances of the offense—a term during which BOP will appropriately care for Jackson's medical needs.

Second, Jackson did promptly accept responsibility for his crimes, waived indictment, and agreed to plead guilty promptly. The recommended sentence appropriately accounts for this factor.

Finally, although imperfect, statistics concerning fraud sentences also support the government's recommendation here. According to the United States Sentencing Commission, the mean term of imprisonment imposed for fraud offenses in the United States in 2015 was 35 months, and the median imprisonment term was 24 months. (See United States Sentencing Comm'n, Statistical Info. Packet, Fiscal Year 2015, D. Mass. at 10 (available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2015/ ma15.pdf).) Within the District of Massachusetts, the mean term of imprisonment was 25 months, and the median imprisonment term was 21 months. (Id.) Thus, the recommended sentence would properly account for the egregiousness of Jackson's

criminal conduct, as well as his prompt acceptance of responsibility and his medical condition, without creating any unwarranted disparity.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court impose a term of at least 24 months imprisonment, a reasonable term of supervised release, $1,312,200 in restitution,[5] and a mandatory special assessment of $200. The government also requests that the Court enter the applicable order of forfeiture.

                                              Respectfully submitted,

                                              CARMEN M. ORTIZ
                                              United States Attorney

By:   */s/ Eric P. Christofferson*
       ERIC P. CHRISTOFFERSON
       Assistant U.S. Attorney

Dated: July 29, 2016

## CERTIFICATE OF SERVICE

I hereby certify that this document file through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                              */s/ Eric P. Christofferson*
                                              ERIC P. CHRISTOFFERSON

Dated: July 29, 2016

---

[5] The restitution amount set forth in the plea agreement does not reflect the amounts owed to Jackson's father and sister because those amounts were identified after the plea agreement had been executed.